Harper *v.* Wilson *et al.*

(Division B. March 28, 1932.)

[140 So. 693. No. 29927.]

**S. R. Nettles** and **Nate S. Williamson,** both of Meridian, for appellant.

Gilbert & Cameron, of Meridian, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

The plaintiff, a minor child, by her next friend, filed suit against Mrs. R. J. Wilson, Dr. R. J. Wilson, and their servant Virner Roberts, and Mr. John T. Chisolm, for a personal injury resulting from a collision between a truck owned by Mrs. R. J. Wilson, driven by Virner Roberts, and a truck owned and being operated by Mr. John T. Chisolm. The truck owned by Mrs. Wilson was proceeding along the public highway between her residence and the city of Meridian transporting a bunch of negro cotton pickers to Meridian, among whom was the plaintiff, a thirteen year old girl.

The declaration alleges that Teresa Harper, with others, had been transported from Meridian to the Wilson plantation in the truck, and that they had picked cotton for Mrs. Wilson at sixty cents a hundred pounds, and, when the work was over, the plaintiff was transported back in the truck to Meridian with the other cotton pickers. It was alleged that Virner Roberts, the driver of the truck, was a reckless, careless, and negligent driver, and that Mrs. Wilson and her husband knew, or by the exercise of reasonable care could have known, that fact; that Virner Roberts, being such a reckless, careless, and negligent driver, would frequently operate the truck at a highly negligent and dangerous rate of speed to the knowledge of Mrs. Wilson and her husband.

It was averred that on the day of the injury, soon after the plaintiff got into the truck, it began to move at a very

rapid rate of speed in a southerly direction, and, while said Virner Roberts was so operating the truck on and over the public highway at a high and dangerous rate of speed, there was only one light burning, and the truck was zigzagging from one side of the road to the other when it met a truck operated by Mr. John T. Chisolm, moving in an opposite direction, with only one light burning, in violation of the law.

Mr. Chisolm pleaded the general issue. Mrs. Wilson and Dr. Wilson pleaded the general issue, and a special plea alleging that the plaintiff, Teresa Harper, was a fellow servant of Virner Roberts at the time the injury occurred, and that the defendants were not liable for her injury by reason thereof.

The testimony is very conflicting about how the injury occurred. It was testified to by some of the witnesses that the Wilson truck was being driven at a rapid rate of speed, some placing it at fifty or fifty-five miles per hour, some between thirty and forty miles per hour, and Virner Roberts placing it at twenty to twenty-five miles per hour. Some testified that the Wilson truck was being operated headed in the direction of Meridian, being on the right-hand side of the road, and that Chisolm was on the same side of the road, coming from Meridian. Some of the witnesses testified that both trucks, the one driven by Virner Roberts and the one driven by Mr. Chisolm, were on the left-hand side of the road.

Mr. Chisolm and another white man in the truck with him both testified that Chisolm was on the right-hand side of the road going from Meridian, and his car was proceeding on an up grade at a very slow rate, six or seven miles per hour; that he had one light only on the right-hand side, and that the Wilson truck approached at a very high rate of speed on the same side of the road, going toward Meridian; that he was attempting to turn his car to the right, but was struck by the Wilson truck coming at a high rate of speed, with only one light burning.

Mr. Chisolm also testified that he first saw the Wilson truck at about thirty yards distant, and Mr. Hurt, the man with Mr. Chisolm, testified to the same effect.

The driver of the Wilson truck, Virner Roberts, testified that his truck was equipped with two lights, and they were burning, and that he saw the Chisolm truck about three hundred yards distant, but that it was on the right-hand side of the road, and that, about the time he saw it, Mr. Chisolm began to pull out into the road, and he turned to the left to avoid running into the Chisolm truck. Another witness on the front seat of the Wilson truck with Virner Roberts testified that he did not see the Chisolm truck until within twenty feet of it, that the Wilson truck was on the right-hand side of the road, and had only one light burning, and that he did not see any lights at all on the Chisolm truck.

One witness testified that, when the truck was loaded at the Wilson plantation, it had only one light burning, and that it had only one light burning at the time of the collision; also that he saw the truck on Saturday night previous to the accident on Tuesday, and it had only one light burning. He further testified that he saw the truck on Tuesday morning, about four o'clock in the morning, and it had only one light burning. Several witnesses testified that the Chisolm truck had no lights burning.

Witnesses who went to the scene of the accident the following morning and made observations testified that the Wilson truck had not been moved when they made the observations, and that the Chisolm truck was just starting to be moved when they appeared on the scene, and that the tracks made by the Wilson truck were some distance, between six and twelve inches over the gravel, and was on the "left hand side to where the Wilson truck was going," going in the direction of Meridian with the left wheels off of the gravel, and both trucks were on the same side of the road, which is the east side of the road, the road running from northwest to southeast.

Testimony as to the employment of the plaintiff, Teresa Harper, is merely that she was hired to pick cotton at sixty cents per hundred pounds, and that she was a girl about thirteen years of age, without previous experience in picking cotton, and that she was transported, with other cotton pickers, as a part of her employment, and that there was some difference in amount between cotton picking rates for persons who were transported to and from work and those who were not so transported.

At the conclusion of the evidence, the plaintiff took a nonsuit against Dr. Wilson, it being shown that he was not the owner of the truck, and that Mrs. Wilson owned the truck and owned the plantation, and employed the cotton pickers thereon. On motion, the court granted a peremptory instruction in favor of Mrs. Wilson, but submitted the issue to the jury as to Virner Roberts and Mr. Chisolm, and the jury returned a verdict against Virner Roberts and in favor of Mr. Chisolm.

The appellant, Teresa Harper, assigns as error the granting of the peremptory instruction in favor of Mrs. Wilson, and complains of the admission of evidence and the giving of certain instructions in favor of Mr. Chisolm, and the rejection of evidence offered by the appellant.

It is argued by the appellant that the proof does not show that plaintiff was a fellow servant of Virner Roberts, but that she was an independent contractor.

We are of opinion that the independent contractor theory is not maintainable on the facts of this case. The plaintiff was a girl thirteen years of age, without previous experience, and had no definite contract, except that she was to pick cotton and receive therefor sixty cents per hundred pounds. We think, however, that it was error to grant the peremptory instruction in favor of Mrs. Wilson, because the declaration alleged, and the proof showed, that the truck was equipped with only one light, there being proof that it had not been equipped with two

lights on Saturday night previous, and at four o'clock in the morning on the day of the injury, and at the time of starting from Mrs. Wilson's plantation on the night of the accident.

From this proof, we think the jury could infer that the truck had only one light during this period of time, and, as the law requires motor vehicles when on the highway to be equipped with two lights, this constituted negligence on the part of the owner of the truck, Mrs. Wilson, which negligence contributed to the cause of the injury. Section 5575, Code of 1930, requires "every motor vehicle shall carry, during the period from one-half hour after sunset to one-half hour before sunrise, at least two lights, showing white lights, visible at least two hundred feet in the direction toward which such motor vehicle is proceeding," etc. Under the proof in the record, which the jury had the right to consider, the Wilson truck was not so equipped.

Can it be said that the failure to so equip was a contributing cause to the injury? Under the facts stated, we think so. The testimony is conflicting, and the jury did not have to take the entire testimony of any one witness as being true. A jury may accept parts of the testimony of witnesses, and reject parts, and this may be done as to any testimony.

It appears to us that, if the Wilson truck had been so equipped, a car could have been clearly seen at a distance of two hundred feet, and, if the car were traveling at the rate some witnesses testified, it could have easily slowed down and prevented the injury, or avoided it. If the Wilson truck was on the right-hand side of the road going to Meridian, as some witnesses testified, and the Chisolm truck was on the same side of the road coming from Meridian, it could have been seen by proper lights on the Wilson truck.

One witness says he did not see the Chisolm truck until within twenty feet of it. Manifestly, if the lights, both

lights, had been burning and the witness was looking, he could have seen the Chisolm truck in time to have prevented the injury.

It is true it appears more probable from the record that the injury was caused by the high and negligent rate of speed at which the Wilson truck was being driven, and that it could not have been stopped within two hundred feet. It is also true, perhaps, that the testimony shows the truck to have been on the curve toward the east side of the road, but it was a question, under all the facts, for the jury to find, and there is testimony from which they could have found that the absence of the proper lights contributed to the injury. We think, therefore, it was error to have granted the peremptory instruction in favor of Mrs. Wilson.

The cause must be reversed as to the defendant, Mr. Chisolm, although the testimony would warrant the verdict in his favor. We would affirm the judgment in his favor but for the giving of instruction No. 7, reading as follows: "The court instructs the jury for the defendant, Chisolm, that the jury are the sole judges of the weight and worth of evidence of every witness and that when you are considering the evidence that you should take into consideration the interest, if any, of every witness in the outcome of this law suit, and if you believe that any witness testified falsely to any material fact you may disregard all of the evidence of said witness altogether."

Giving of instructions like this has been uniformly condemned and has been repeatedly decided to be error. A witness may testify falsely to matters of fact, though mistaken or ignorant, but believing, when he testifies, that same are true. It is only willful and corrupt swearing that constitutes perjury which will warrant the court in instructing the jury that they may disregard the entire testimony of the witness if they believe from the evidence it was false. It is a rare case when instructions of this

kind are helpful. A jury is usually able to discern when a witness is telling the truth, and whether his testimony is worthy of belief or not. This kind of instruction should never be asked except after refreshing the mind as to the law upon this proposition.

We regret having to reverse a jury finding, where there are so many different versions by witnesses, but we are compelled to do so under the law.

Reversed and remanded.